*B. & A. Monroe* for plaintiff; *Cates and Gray* for defendant.

*Margin note:* Moran vs Woodyard, &c. his suit, and that defendant shall recover his costs is valid.

---

## Moran *vs* Woodyard, &c.

### ERROR TO THE GARRARD CIRCUIT.

*Bills of review. Chancery jurisdiction.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

To enjoin a final decree for matters of equity existing prior to its rendition, and which might have been brought into the original suit, is in effect, so far to reverse or annul the decree, which can only be done on specific grounds which authorize a review of the first decree. Upon the bill of the complainant, Woodyard, no such grounds are made out or even alledged. The

*Margin notes:* CHANCERY. Case 136. July 26.

No bill in chancery can properly be filed to enjoin a decree unless it be such as would authorize a bill of review.

'fact now relied on of usury in the debt for which the decree was rendered, was known to him when he was called on to answer the bill in the former suit, and his failure, without cause, to set it up in that suit, in which he filed no answer, and the bill was taken for confessed, precludes him from afterwards relying on it, and espe-cially when there was no discovery which authorized a review.

The failure of a surety in a suit in chancery, to set up and rely upon an availa-ble defence which he might have done by dil-igence, is no ground for ask-ing relief at the hands of the Chancellor after a decree.

The case as to Kemper, is somewhat different. He al-ledges in his cross bill praying for a perpetuation of the injunction, that he did not make defence in the action at law and the suit in chancery, "as he was a mere securi-ty, and ignorant of the usury." Being called on to an-swer the former bill, it was his right and duty to make all just defences to the claim set up as the ground of the attachment, and other relief therein prayed. He was bound, of course, to use reasonable diligence in ascer-taining the facts of the transaction with which he was connected, and which might affect the equity of the claim set up. He might have ascertained the facts by enquiry of the principal debtor, for whom he had bound himself as surety. And in failing to do so, he submitted himself, so far as that suit and claim were concerned, to the discretion of the principal in making defence. There may perhaps be cases in which a surety sued with his principal, and ignorant of the facts, might ob-tain relief against a decree, on the ground of fraud or neglect in his principal in making defence, or in con-cealing or misrepresenting facts. But the mere sugges-tion of the surety that he did not defend, as he was a mere surety, and ignorant of the usury, does not make out such a case. And it is apparent, that although the attachment was particularly directed against the surety, and levied on his property alone, he bestowed no sort of care or attention on the defence of the suit. The salu-tary maxim "*vigilantibus non dormientibus succurrit lex*," has a direct application to such a case. If the mere failure to make a defence upon facts perfectly within the reach of the party, were a proper ground for opening a decree or judgment, legal controversies would never be brought to an end: "*Interest reipublicæ ut sit*

*finis litium,*" waiving all objection to the frame of the bill and cross bill, as not being properly bills of review, we think they are substantially defective in failing to make out a ground for reviewing and reversing the former decree. Nor is the alledged usury conclusively established, though rendered very probable by the evidence.

Wherefore, the decree is reversed and the cause remanded, with directions to dismiss the original bill of Woodyard and the cross bill of Kemper.

*Dunlap* for plaintiff; *Turner and Burton* for defendants.